**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **THOMAS S. NEUBERGER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **C.A.No.** |
| | : | |
| **JAMES M. BAKER, individually and in his** | : | |
| **official capacity as the Mayor of the City of** | : | |
| **Wilmington; LEO LYNCH, individually and in** | : | |
| **his official capacity as Deputy Commissioner of** | : | |
| **the Department of Licenses & Inspections;** | : | **Jury Trial Demanded** |
| **ELLIS BLOMQUIST, individually and in his** | : | |
| **official capacity as building inspector;** | : | |
| **WILLIAM S. MONTGOMERY, individually** | : | |
| **and in his official capacity as the Chief of Staff** | : | |
| **of the Mayor; JEFFREY J. STARKEY,** | : | |
| **individually and in his official capacity as the** | : | |
| **Commissioner of the Department of Licenses &** | : | |
| **Inspections; JAMES DIPINTO, individually and** | : | |
| **in his official capacity as Zoning Administrator;** | : | |
| **TREVOR KNIGHT, individually and in his** | : | |
| **official capacity as Plan Reviewer; LEWIS** | : | |
| **CAMACHIO, individually and in his official** | : | |
| **capacity as Building Supervisor for Ellis** | : | |
| **Blomquist; and CITY OF WILMINGTON, a** | : | |
| **municipal corporation,** | : | |
| | : | |
| **Defendants.** | : | |

**COMPLAINT**

1.  This is a civil action for compensatory and punitive damages and for injunctive relief
for retaliatory violations of plaintiff's rights to freedom of association, free speech and to petition
the government for redress of grievances under the First Amendment of the United States
Constitution as well as his rights to Equal Protection and Due Process of the law under the
Fourteenth Amendment.  Plaintiff exercised his First Amendment rights to (1) associate with his

clients, (2) speak out and expose the illegal actions of incompetent or corrupt public officials, and (3) bring the bright light of public scrutiny upon the many misdeeds of public officials in a broken municipal government where the system of checks and balances had failed resulting in a system of racial quotas and racial discrimination in municipal hiring and promotions as well as a police department which has used excessive force to kill at least one innocent civilian. Defendants then retaliated against plaintiff for his protected activities by refusing him a certificate of occupancy for renovations to his home which is located within the City boundaries.

## I.  JURISDICTION

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202, and the First and Fourteenth Amendments to the U.S. Constitution.  The cause of action arises under 42 U.S.C. § 1983.  The claims arose in this judicial district.

## II.  THE PARTIES

3.  Plaintiff Thomas S. Neuberger ("Neuberger") is a Delaware attorney, a citizen of the United States and a life long resident of the City of Wilmington, Delaware.

4.  Defendant James M. Baker is currently the Mayor of the City of Wilmington, Delaware.  He had personal involvement in the events discussed herein.  He is sued individually and in his official capacity.

5.  Defendant Leo Lynch is currently the Deputy Commissioner of the Department of Licenses & Inspections of the City of Wilmington, Delaware.  He had personal involvement in the events discussed herein.  He is sued individually and in his official capacity.

6.  Defendant Ellis Blomquist is currently a building inspector of the City of Wilmington, Delaware.  He had personal involvement in the events discussed herein.  He is sued individually

and in his official capacity.

7. William S. Montgomery is currently the chief of staff of the Mayor of the City of Wilmington, Delaware. He had personal involvement in the events discussed herein. He is sued individually and in his official capacity.

8. Defendant Jeffrey J. Starkey is currently the Commissioner of the Department of Licenses & Inspections of the City of Wilmington, Delaware. He had personal involvement in the events discussed herein. He is sued individually and in his official capacity.

9. Defendant James DiPinto is currently the Zoning Administrator of the City of Wilmington, Delaware. He had personal involvement in the events discussed herein. He is sued individually and in his official capacity.

10. Defendant Trevor Knight is currently the Plan Reviewer of the City of Wilmington, Delaware. He had personal involvement in the events discussed herein. He is sued individually and in his official capacity.

11. Defendant Lewis Camachio is currently the Building Supervisor for defendant Blomquist of the City of Wilmington, Delaware. He had personal involvement in the events discussed herein. He is sued individually and in his official capacity.

12. Defendant City of Wilmington (the "City") is a municipal corporation organized under the laws of the State of Delaware which operates the City of Wilmington Police Department and the Department of Licenses & Inspections as two of its municipal departments.

### III. FACTS GIVING RISE TO THE ACTION

#### A. Plaintiff's Background.

13. Neuberger has practiced law successfully in Delaware and nationally for more than 33 years. He received his J.D. degree in 1974 from Georgetown University Law Center. He was

an editor of the *Georgetown Law Journal* and an associate editor of the *American Criminal Law Review*.

14.  From June 1972 through April 1974, he served as a law clerk to the Honorable John H. Pratt, Judge of the U.S. District Court for the District of Columbia.  He is a member of the following bars: Delaware Supreme Court, U.S. District Court for the District of Delaware, U.S. Supreme Court, and the U.S. Court of Appeals for the Third, Fourth, Fifth, Sixth, Seventh, Ninth and D.C. Circuits.  He is a member of the Delaware State Bar Association and the National Employment Lawyers Association ("NELA").

15.  Since the mid-1970's he has lectured on topics such as federal practice and procedure, the First Amendment to the U.S. Constitution, the Civil Rights Acts, and recent case developments at many national continuing legal education conferences.

16.  He also served as a national vice president of the Christian Legal Society from 1978 to 1981.  From 1982 to 1987 he served as a board member and general counsel for The Rutherford Institute ("TRI"), an international civil liberties organization based in Charlottesville, Virginia.  He is currently a board member of TRI.  Presently, he also serves as a Board member of the Philadelphia, Pennsylvania chapter of the National Employment Lawyers Association, which has a nationwide membership.

17.  He has authored numerous articles on legal subjects.

18.  He is a partner in and the founder of The Neuberger Firm in Wilmington, Delaware and has a successful practice in constitutional law, employment discrimination, torts and other civil litigation.  Until December 2003, he was a solo practitioner.  Prior to entering solo practice in 1981, he was an associate and then a partner in a medium sized Wilmington, Delaware, law firm.

-4-

19.   Neuberger enjoys a reputation as being a dedicated civil rights attorney who represents the 'little guy.'  He specializes in helping the small and in need stand up to the powerful and the corrupt.

20.   Neuberger enjoys an excellent reputation in the Delaware legal community.  For example, former Delaware Supreme Court Justice William T. Quillen has been quoted in the press as stating "He's a seasoned lawyer and he behaves like one.  He's well prepared and he's respectful to the court.  Unlike some 'cause' lawyers, he's professional and behaves accordingly."  Similarly, on January 31, 2005, the Chief Judge of the United States Court of Appeals for the Third Circuit appointed him to a three year term on the 15 member Lawyers Advisory Committee of the Judicial Council of the Third Circuit.

21.   He was profiled and featured as one of the top attorneys in Pennsylvania and Delaware in the June 2007 issue of <u>Pennsylvania Super Lawyers</u>, at 28-29-33, and as one of the State's top lawyers in the August 2006 issue of <u>Delaware Today</u> magazine, at 56-57, 91.  Earlier he was selected by his peers in the Delaware Bar as one of its top 70 attorneys as reported in the <u>Delaware Today</u> magazine in October 1996; as one of its 100 top attorneys as reported in November 1999; as one of the top 175 attorneys as reported in October 2001, and as one of its top 75 power attorneys in November, 2004.  He also was listed as one of Delaware's leading business lawyers in the area of employment and labor law in the 2003-2004 edition of <u>Chambers USA America's Leading Business Lawyers</u> (2003), at 95, which reports that opponents "concede him to be an 'able and persuasive adversary' with a string of notable victories to his name."

**B.  Plaintiff's Protected First Amendment Association, Speech and Petitioning.**

**1.  Filing of  Lawsuits and Speech to the Media and the Public Challenging Government Corruption, Illegality and Incompetence.**

22.   Over the last several years, Neuberger has associated with employees of the City and with victims of police brutality and he has taken these individuals on as clients.

23.   On behalf of one of these clients, he filed a civil rights racial discrimination employment lawsuit against defendants Baker and the City on April 20, 2006.  That case is scheduled for trial in February 2008.

24.   Defendant Baker fears the consequences of a public trial in that case.

25.   During the course of that lawsuit filed on behalf of a white officer, plaintiff exposed the operation of a 29 year old unconstitutional and illegal racial quota system governing all promotions to the rank of Inspector in the City police department.  He revealed that defendant Baker, who is black, helped initiate this racial quota system and continued to advocate and support it during his tenure on City Council and later during his tenure as Mayor.  He also exposed Baker's illegal municipal hiring and promotions policy whereby white employees are disqualified from hiring or promotions solely due to their race.  He exposed Baker's illegal and admitted policy of using race as the tie-breaker between equally qualified white and black applicants for positions in the City police and fire departments as well as other departments in City government.

26.   Defendant Baker instituted and enforced these racially discriminatory policies because he believes that racial politics and a racial spoils system are legitimate ways to run a municipal government.  Baker believes that the color of a person's skin is more important than their qualifications or the content of their character.

27.   Plaintiff has made numerous public statements to the media, highly critical of Baker, the City and their illegal racially discriminatory policies.

28.  For example, his most recent public statement was published in the News Journal on

October 20, 2007, just days before the adverse action which is the basis for this lawsuit.  At that time, plaintiff characterized a belated action by defendant Baker to purportedly end the City's long established racial quota system as mere "window dressing to try to fool the jury" in the upcoming February 2008 trial.

29.  A mere two weeks earlier, on October 5, 2007 the News Journal also published plaintiff's statements and accusations that Baker and the City were operating "a racially unconstitutional quota system to discriminate against quality people" and that Baker was issuing orders through defendant Montgomery to promote his illegal policies.  Neuberger also published for the first time the fact that over 29 years ago, then City Councilman Baker had "helped establish the system of having at least one black officer" fill the Inspector's position in the police department - the illegal racial quota system at issue in that case

30.  Plaintiff's speech infuriated Baker and angered the remaining defendants, many of whom are black, some of whom were beneficiaries of similar illegal racial policies in City employment, and all of whom are supporters of Baker and his administration.  Defendants believed that such critical information published in the media would adversely affect Baker's chances for reelection as Mayor.

31.  Baker is presently campaigning for re-election to a third term as mayor of Wilmington in the elections scheduled for November 2008.  No Wilmington mayor has ever been elected to a third term in Wilmington.  Baker was elected to his first term as mayor on crossover white votes because of allegations of racial prejudice against whites which he had made against his campaign opponent, the previous black mayor, James H. Sills.  Now that Baker had been exposed as also discriminating against white citizens, he fears he will suffer the same fate as former mayor Sills - defeat in a bid for reelection - due to white voter anger.

32.   In another lawsuit, plaintiff represents the estate and widow of an unarmed civilian who was tortured and killed by the City police department and he has sued the City and twelve named City police officers for that unjustified killing.

33.   Regarding the incidents underlying this second lawsuit, plaintiff has made numerous public statements highly critical of the City and its police officers.

34.   These lawsuits were filed to achieve the lawful objective of equality of treatment for all citizens by City government and constitute a form of political expression and petition of the government for redress of grievances.

35.   Plaintiff's vigorous advocacy, association, speech and petition on behalf of these clients angered defendants who were: named defendants in those lawsuits; friends or supporters of named defendants in those lawsuits; or the beneficiaries of these same illegal municipal policies under attack in those lawsuits.

36.   Defendants were angered by plaintiff's representation of these many clients and by the fact that, for example, he filed lawsuits on behalf of his clients against the Mayor and various City police officers.

37.   Defendants were angered and humiliated that these lawsuits exposed their illegal actions to the bright light of public scrutiny.  Defendants do not subscribe to the theory that sunlight is the best disinfectant for government misconduct.  Instead, defendants had vigorously sought to hide their illegal actions from the public and electorate which might otherwise have held them accountable. The filing and prosecution of these lawsuits put a halt to many of defendants' plans.

38.   As a direct and proximate result of the filing and prosecution of these lawsuits, defendants carry a personal vendetta against plaintiff and have sought to inflict injury upon him.

**2. Additional Speech to the Media and the Public.**

39.  On numerous additional occasions, plaintiff actively and publicly spoke out to members of the news media and the general public and challenged numerous instances of corruption, illegality, incompetence and breach of the public trust by Baker, the City and its employees.

40.  Plaintiff's expressive activity was published throughout the news media and the general public.

41.  By speaking to the media, plaintiff sought to inform and sound the alarm to the general public and electorate about numerous instances of corruption, illegality, incompetence and breach of the public trust by defendants and City police officers.

42.  Defendants were enraged by all of plaintiff's speech to the news media, the general public and the electorate.  They were angered and humiliated that their numerous illegal actions were exposed to the bright light of public scrutiny for all the world to see.  Defendants had vigorously sought to hide their illegal actions from the public which might otherwise have held them accountable.  But plaintiff's speech to the news media has exposed many of defendants' illegal plans.

43.  As a direct and proximate result of his speech to the news media, defendants carry a personal vendetta against plaintiff and have sought to inflict injury on plaintiff.

**3. General Allegations.**

44.  At all times plaintiff associated with clients, spoke out on issues of public concern, petitioned the government for redress of grievances under the First Amendment, sought to bring to light actual or potential wrongdoing or breach of the public trust by high public officials and also sought to bring to light defendants' illegal actions which violated the U.S. Constitution and

other laws.

45.  By its content, form and context, at all times plaintiff spoke out about matters of public concern.

46.  All of plaintiff's First Amendment protected activities were on matters of public concern to City government, the General Assembly, the Governor of Delaware, the news media, voters and the public at large.  His First Amendment protected activities related to matters of political, social and other concern to the community.

47.  Plaintiff was acting in good faith and with honest motive at all times when he exercised his First Amendment protected rights.

### C.  Defendants' Retaliation Against Plaintiff.

48.  Plaintiff is a property owner in the City where he lives and owns his residential dwelling in fee simple absolute.

49.  After the filing of the two above mentioned lawsuits and their attendant public statements and publicity, in February 2007 plaintiff obtained a building permit from the City to enclose his front porch, consisting of about 100 square feet so as to add a heated room to his house.

50.  About $50,000 in renovation expenses were incurred in this construction.

51.  All necessary certifications, permits, inspections and approvals were obtained throughout this project at all of its construction stages, from design, planning and implementation.

52.  Throughout this process plaintiff and his agents were singled out and nit picked to death by defendants and their agents about the project, which was needlessly and unnecessarily delayed and complicated it for over ten months.

53. Finally all approvals were obtained for construction of the interior of the dwelling, for the electrical work and for the other interior work.

54. The floor of the room had to be raised which also necessitated the design and construction of new front steps for the dwelling leading from the public sidewalk on the outside street off of the front porch.

55. Design approvals for the steps and outside construction were obtained from the City and in August 2007 the step construction was completed.

56. From the street, four concrete steps lead to a platform consisting of sidewalk, then three slate steps lead up to another slate platform and the front door of the dwelling.

57. Both sets of steps required three foot deep concrete footers which were constructed, inspected and approved.

58. The sidewalk and platform above the first four steps did not require a three foot deep concrete footer since sidewalk does not require footers. Instead the sidewalk platform consists of a few inches of concrete over gravel.

59. To the right facing the house next to this sidewalk is a mature two story tall tree which is over 40 years old. Its trunk is directly next to the sidewalk design and its trunk and roots protrude directly under where the sidewalk was to be constructed.

60. To save the tree from destruction, the sidewalk was not set as deep as possible but instead was set two inches higher. Otherwise the tree trunk and roots would have had to be cut which would have injured tree and eventually killed it. Over time, the cutting of these roots would have weakened the tree, causing it to tilt and eventually fall, endangering pedestrians and neighborhood children on the adjacent public sidewalk.

61. This necessitated the first slate step being constructed with an elevation one course of

brick (consisting of two inches), which is lower than the next two steps up the stairs leading up to the front door.

62.   This issue was resolved when inspector defendant Blomquist verbally approved this modification on behalf of the City and other defendants.

63.   On or about October 22, 2007, the final certificate of occupancy ("CO") was being issued for the dwelling.  But a critical newspaper story quoting plaintiff had been published in the News Journal just two days earlier.

64.   As a result, defendants Lynch, Blomquist and other defendants intervened and sought pretextual reasons to refuse the CO.

65.   Lynch, the second in command in his department and a high level manager, singled out plaintiff, visited the site with his tape measure and reopened the closed issue of the two inch riser on one step.

66.   Historically Lynch has visited no other site in the City to nit pick the size of a step riser.

67.   Lynch and Blomquist then decided to refuse the CO.  They revoked prior approvals and refused to endorse the final construction.

68.   In doing so, Lynch and Blomquist acted in concert with and with the knowledge of, participation, approval sanction and ratification of all the other defendants.

69.   On or about November 6, 2007, Lynch advised plaintiff by telephone that no CO would be issued for this project.

70.   Defendants instead demanded that the front steps be torn down and reconstructed from scratch with a fourth slate step constructed leading up to the second platform at the front door.

71.   However, the construction of a forth step at that level will shorten the concrete

platform at the first level, at the top of the first four steps.  That sidewalk and platform then will

violate other provisions of the building code for the City and the project again will be denied a

CO.

72.   While the design, construction and drawings for this project were long ago previously

approved by defendants and the City, this belated Catch-22 situation was never identified by the

City or its agents.   If another step is added as defendants demand to make the riser for each step

equal, the sidewalk would then violate another section of the building code.

73.   Accordingly, no CO can issue to close out this construction.

74.   The demands of the City regarding this riser for one step are unprecedented.

75.   There are many specific instances of new City construction for steps within the last

year which contain similar conditions but which the City has accepted with full knowledge of the

discrepancies in the risers.  One such example exists on the same City block as plaintiff's home.

Another exists five blocks away to the West.  Others are found in the neighborhood.

76.   Review of the steps outside of the City's offices found in the City/County building

located at 800 N. French Street, in Wilmington, reveal similar discrepancies.

77.   There also are numerous other specific instances where COs have been issued by the

defendants despite failure to comply with unreasonable demands of the City, such as on Taylor

Street.

78.   Plaintiff has been singled out for the denial of his CO in retaliation for his protected

First Amendment activity; out of racial animus because of his association with and advocacy on

behalf of white city employees; and for no rational reason whatsoever.

79.   The decision to deny a CO is a final decision by the City.  The defendants involved

are final decisionmakers.  Neither the Administrative Board of the City of Wilmington, nor the

City Council are involved in the decision to deny a CO.


## G.  Plaintiff's First Amendment Rights Have Been Chilled.

80.  As discussed above, plaintiff engaged in First Amendment protected activity.

81.  Plaintiff's ability to engage in First Amendment protected activity has been chilled by

defendants' retaliation against him.

82.  Additionally, plaintiff's clients' rights to engage in First Amendment protected

activity have been chilled by defendants' actions.

83.  Defendants cannot assert any legally cognizable interest in the balancing that could

even hope to outweigh these First Amendment rights.

## IV.  CAUSAL CONNECTION

84.  The totality of retaliatory adverse action taken by defendants against plaintiff are

sufficient to deter a person of ordinary firmness from exercising his First Amendment rights to

freedom of association, free speech and to petition the government for redress of grievances.

85.  A reasonable person of ordinary firmness would be deterred from exercising his First

Amendments rights to freedom of association, free speech and to petition the government for

redress of grievances if he was forced to jeopardize the investment of over $50,000 in his real

property, or could be falsely accused of failing to follow permit and licensing requirements.

86.  There is a causal link between First Amendment protected activity on matters of

public concern and the adverse actions discussed above.  This is demonstrated by:

      (a)     Personal knowledge and awareness of protected activity - defendants each
              know of plaintiffs highly publicized lawsuits against the defendant Mayor,
              the City and the police department and his public statements published in

the News Journal twice in October 2007;

(b)     The temporal proximity of events - within two days of publicly criticizing the City for its use of racial quotas, defendant Lynch visited the worksite, and he and Blomquist revoked the previous verbal approval for the issuance of a CO and refused to exercise their authority to approve this project;

(c)     Hostility and antagonism following protected activity - defendants regularly discussed with their employees and others their loathing of plaintiff because he had filed numerous lawsuits against the City, the Mayor and the police;

(d)     Disparate treatment - defendants have singled plaintiff out in a dispute over the riser for one step when they have not done so for many other houses in the City, including one on the same block of plaintiff, and as they have not done for the very building where the City's own offices are located.

(g)     The big picture - the evidence as a whole demonstrates causation.

87.  First Amendment protected activity was a substantial or motivating factor in the adverse action taken against plaintiff.  The natural probative force of the evidence demonstrates causation.

88.  Any non-retaliatory reasons cited by the defendants to defeat causality are a pretext.

89.  As a direct and proximate result of the actions of the defendants as detailed herein, plaintiff has suffered and is suffering humiliation, injury to his reputation, emotional distress and pecuniary damages.

## V.  ALLEGATIONS REGARDING THE DEFENDANTS' CONDUCT

90.  The individual defendants' actions violated clearly established federal constitutional rights of which any reasonable official would have known, including more than three decades of Supreme Court and Third Circuit case law prohibiting retaliation against citizens for protected speech.

-15-

91.  At all times material hereto the individual defendants participated in, authorized, and sanctioned the federal constitutional deprivations described above which illegally retaliated against plaintiff.

92.  At all times material hereto the individual defendants and their agents were acting under color of law.  The federal constitutional deprivations described herein are fairly attributable to the State.

93.  The actions of the defendants and their agents or employees were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federal constitutional rights and because of the exercise of those rights.

94.  The defendants either knew or showed a negligent or reckless disregard for the matter of whether their conduct violated federal constitutional rights.

95.  Their actions were outrageous and taken with evil motive, in bad faith, out of personal animus and without any reasonable grounds to support them.

96.  Their actions were wanton and malicious or taken with reckless indifference to federal constitutional rights.

97.  The exercise of rights under the U.S. Constitution made a difference in all actions adverse to plaintiff.

98.  The exercise of these rights was a motivating, substantial or determinative factor in all actions adverse to plaintiff.

99.  The defendants did not reasonably believe that the actions they took were necessary to accomplish any legitimate governmental purpose.

100.  The individual defendants' actions were willful, reckless and oppressive.

101.  The defendants' actions were motivated by bias, bad faith, and improper motive.

102. The defendants' actions constitute an abuse of governmental power.

103. The defendants' actions do not further any narrowly drawn important, substantial or compelling governmental interest.

104. The defendants' actions are not so reasonable as to further any governmental interest asserted and do not closely fit the goal of serving those governmental interests.

105. The actions of the defendants were taken pursuant to City policies, customs and/or practices and were authorized, sanctioned, implemented, permitted, and ratified by officials functioning at a policy making level.

106. By the policy, custom, and/or practice of officials functioning at a policy making level, the defendants have retaliated against plaintiff. That policy, custom and/or practice caused a deprivation of constitutional rights. Additionally, the defendants must have known, or reasonably should have realized, from the nature of their conduct that their policy, custom and/or practice was causing or was likely to cause violations of constitutional rights.

## COUNT I (First Amendment - Freedom of Association Retaliation).

107. Plaintiff repeats and realleges paragraphs 1-106 set forth above.

108. The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for his First Amendment protected associations. There is a temporal and causal relationship between plaintiff's aforementioned protected activity and adverse action. First Amendment protected activity was a substantial or motivating factor in the adverse action.

109. Plaintiff's constitutional right to freedom of association has been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

## COUNT II (First Amendment - Free Speech Retaliation).

110. Plaintiff repeats and realleges paragraphs 1-109 set forth above.

-17-

111.  The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for his First Amendment protected freedom of speech.  There is a temporal and causal relationship between plaintiff's aforementioned protected activity and adverse action.  First Amendment protected activity was a substantial or motivating factor in the adverse action.

112.  Plaintiff's constitutional right to freedom of speech has been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

### COUNT III (First Amendment - Petition Clause Retaliation).

113.  Plaintiff repeats and realleges paragraphs 1-112 set forth above.

114.  The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for his First Amendment protected petitioning of the government for redress of grievances.  There is a temporal and causal relationship between plaintiff's aforementioned protected activity and adverse action.  First Amendment protected activity was a substantial or motivating factor in the adverse action.

115.  Plaintiff's constitutional right to petition the government for redress of grievances has been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

### COUNT IV (First Amendment - Freedom of Association, Free Speech and Petition Clause Retaliation)

116.  Plaintiff repeats and realleges paragraphs 1-115 set forth above.

117.  Defendant Blomquist previously filed a lawsuit in this federal court against former Mayor James H. Sills.

118.  Plaintiff represented and successfully defended Mayor Sills against Blomquist's lawsuit.

119.  Blomquist was aware of that representation and it angered and antagonized him.

His antagonism towards plaintiff was well known to the other defendants and to his superiors.

120. Plaintiff's later representation in and speech related to the more recent lawsuits discussed above further angered and antagonized Blomquist, who is a supporter of defendant Baker.

121. When plaintiff secured his building permit, Blomquist saw an opportunity to retaliate against plaintiff for his successful representation and defense of former Mayor Sills against Blomquist's unsuccessful lawsuit and plaintiff's other protected First Amendment activities.

122. Despite his known bias and animosity towards plaintiff, Blomquist was specially assigned to plaintiff's project by defendants.

123. This assignment violated the City policies governing conflicts of interest and other codes of conduct. City policies required that another inspector should have been assigned to this project.

124. These policies were violated and this was done because of defendants' antagonism towards plaintiff.

125. As discussed above, once construction began Blomquist did all in his power to nit pick and delay completion of the project. His hostility and unprofessional conduct was public and demonstrated.

126. After the project was finally completed to his grudging satisfaction and approval, he and other defendants conspired and resurrected the long closed issue of the step riser as a pretext to retaliate against plaintiff for his prior representation and defense against Blomquist's unsuccessful lawsuit and other protected First Amendment activities.

127. Defendants have denied plaintiff his CO in retaliation for his protected First

Amendment activities.

128.  The defendants took action adverse to plaintiff as a direct and proximate result of and in retaliation for his First Amendment protected petitioning of the government for redress of grievances.  There is a temporal and causal relationship between plaintiff's aforementioned protected activity and adverse action.  First Amendment protected activity was a substantial or motivating factor in the adverse action.

129.  Plaintiff's constitutional rights to freedom of association, freedom of speech and to petition the government for redress of grievances have been denied under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

### COUNT V (Fourteenth Amendment - Equal Protection - Race Discrimination - Strict Scrutiny)

130.  Plaintiff repeats and realleges paragraphs 1-129 set forth above.

131.  Defendants' actions were motivated by racial hostility and racial animus towards plaintiff because he associated with and advocated on behalf of white employees and their right not to be discriminated against by defendant Baker's blatantly illegal racial quota system and other illegal racial policies which violate the Fourteenth Amendment Equal Protection clause.

132.  Plaintiff's constitutional right to be free of race discrimination and the equal protection of the laws has been denied under the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

### COUNT VI (Fourteenth Amendment - Equal Protection - Class of One - Rational Basis Scrutiny)

133.  Plaintiff repeats and realleges paragraphs 1-132  set forth above.

134.  Defendants treated plaintiff differently from other similarly situated city residents. For example, there are many specific instances of new construction for steps within the last year

which contain similar conditions but which the City has accepted with full knowledge of the discrepancy in the riser. One such example exists on the same block as plaintiff's home.

135. Defendants intentionally singled plaintiff out for different and unprecedented treatment.

136. There is no rational basis for the difference in treatment.

137. Illegal conduct under the U.S. Constitution can never be a rational basis for any legitimate governmental action.

138. There is no legitimate basis in fact for the treatment of plaintiff nor is there any rational relationship to any legitimate governmental objective.

139. Plaintiff's constitutional right to the equal protection of the laws has been denied under the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

### COUNT VII (Fourteenth Amendment - Procedural Due Process)

140. Plaintiff repeats and realleges paragraphs 1-139 set forth above.

141. Plaintiff has a protected property interest to enjoy, use and modify his property.

142. This interest is rooted in the U.S. Constitution, the Delaware Constitution of 1887, state statutory and common law, and City law.

143. Defendant Blomquist was actually biased against plaintiff throughout the process described above.

144. Plaintiff was denied the right to a neutral and impartial decisionmaker.

145. A constitutionally adequate process includes the constitutional requirement that the Blomquist disqualify himself since his impartiality might reasonably be questioned.

146. Engaging in a balancing of the constitutional interests, plaintiff was deprived of his property interest in the use, enjoyment and modification of his property without adequate

procedural due process protections.

147.  The private interest affected by the official action was great.  Plaintiff has already been forced to expend thousands of dollars and will be forced to spend many thousands more in the future.

148.  The government's interest, including the function involved and the fiscal and administrative burdens that a recusal would entail, was non-existent.  It was a simple matter to substitute another of the numerous building inspectors employed by the City and then to conduct an impartial process.  City rules and regulations require that this substitution should have occurred to begin with.

149.  The risk of an erroneous deprivation of plaintiff's private interest through the procedures used is very great, and the probable value, if any, of the additional or substitute procedural safeguard of substituting a disinterested building inspector also is substantial.

150.  A motivating or determinative cause of the denial of plaintiff's CO was a constitutional violation.

151.  Plaintiff's constitutional right to due process of law has been denied under the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

**Wherefore**, plaintiff prays that the Court:

    A.    Enter judgment against the defendants.

    B.    Enter a declaratory judgment declaring the acts of the defendants to be a violation of plaintiff's constitutional rights.

    C.    Enter a judgment against defendants, jointly and severally, for compensatory damages.

    D.    Enter a judgment against the individual defendants, jointly and severally, for punitive damages.

E.     Award plaintiff costs, interest and attorneys' fees for this suit, and pre and post judgment interest.

F.     Issue a mandatory injunction requiring all the defendants to issue plaintiff a certificate of occupancy.

G.     Issue a permanent injunction, enjoining all the defendants from retaliating against plaintiff now or in the future.

H.     Issue a reparative injunction directing that each defendant send plaintiff an individually signed letter, personally apologizing to him for their illegal violations of his constitutional rights and promising never to do so again.

J.     Require such other and further relief as the Court deems just and proper under the circumstances.

**THE NEUBERGER FIRM, P. A.**

/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
SJN@NeubergerLaw.com

Dated:  November 13, 2007                    Attorney for Plaintiff

JS 44   (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Thomas S. Neuberger

### DEFENDANTS

(See attached)

(b) County of Residence of First Listed Plaintiff    New Castle
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
(See attached)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- X 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | Security Act | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | X 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- X 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION   (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

(See attached)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE   (See attached)

DOCKET NUMBER

DATE   11/13/07

SIGNATURE OF ATTORNEY OF RECORD   Stephen J. Neuberger

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 3/99)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

### Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

I. **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States, are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.**  This section of the JS-44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

IV. **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a)  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

VI. **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII. **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.**  This section of the JS-44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.

## Civil Cover Sheet Attachment
### Neuberger v. Baker, et al.

**I.(c)    Plaintiff's Attorney:**

Stephen J. Neuberger, Esq. (Del. Bar #4440)
The Neuberger Firm, P.A.
Two East Seventh Street, Suite 302
Wilmington, DE  19801
(302) 655-0582
SJN@NeubergerLaw.com

**I.(a)    Defendants:**

James M. Baker,
Leo Lynch,
Ellis Blomquist,
William S. Montgomery,
Jeffrey J. Starkey,
James DiPinto,
Trevor Knight,
Lewis Camachio,
City of Wilmington

**VI.  Cause of Action:**

This is a civil action pursuant to 42 U.S.C. § 1983 for compensatory and punitive damages and for injunctive relief for retaliatory violations of plaintiff's rights to freedom of association, free speech and to petition the government for redress of grievances under the First Amendment to the U.S. Constitution, as well as his rights to Equal Protection and Due Process of law under the Fourteenth Amendment.

**VIII.  Related Case(s) If Any:**

Judge: Farnan
- <u>Blomquist, et al. v. Sills, et al.</u>, C.A.No. 98-404-JJF

Judge: Robinson
- <u>Dietz v. Baker, et al.</u>, C.A.No. 06-256-SLR

Judge: Vacant Judgeship
- <u>Hale, et al. v. Browne, et al.</u>, C.A.No. 07-166-***

This present lawsuit is related to the three aforementioned cases, in that plaintiff's First Amendment protected activity arises out of his defense, filing and prosecution of these three lawsuits.

By way of further explanation, one of the key defendants in this case is Ellis Blomquist. Defendant Blomquist himself was a party to the <u>Blomquist</u> case listed above, which was one of a series of similar cases that were assigned and litigated before Judge Farnan. Plaintiff Thomas S. Neuberger successfully represented the lead defendant in the <u>Blomquist</u> case, retired Mayor James H. Sills. Plaintiff alleges in this present case that his successful representation of the former Mayor in that earlier case gave rise to the motive to retaliate against him in the present case. Counsel reasonably expects that defendant Blomquist will deny retaliatory intent in the present action which will necessitate inquiry and discovery into matters related to the <u>Blomquist</u> action over which Judge Farnan presided. Accordingly, judicial economy would be served by assignment of this case to Judge Farnan.

Similarly, another of the key defendants in this case is present Mayor James Baker, who also is the primary defendant in the above referenced <u>Dietz</u> case presently being litigated and scheduled for a February trial before Judge Robinson. Plaintiff alleges that his vigorous prosecution of the <u>Dietz</u> case is one of the motivations for defendant Baker's retaliatory actions in the present case. Accordingly, judicial economy also would be served by assignment of this case to Judge Robinson.

Lastly, for similar reasons, the <u>Hale</u> case also is related to the present matter, but to a lesser extent than the <u>Blomquist</u> and <u>Dietz</u> actions. That is because there are no shared parties between the present matter and the <u>Hale</u> case.

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 7 - 7 2 3 - _____

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ 3 _____ COPIES OF AO FORM 85.

_____ 11/13/07 _____          x _____
(Date forms issued)              (Signature of Party or their Representative)

                              x Cheryl Hertzog
                              _____
                              (Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action